UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

MAR 17 2026

Nathan Ochsner, Clerk of Court

RENEEKYIA DAVIS,

PLAINTIFF,

V.

SECURE PARCEL DELIVERY SERVICE, LLC,

AND

AMAZON LOGISTICS, INC.,

DEFENDANTS.

CIVIL ACTION NO. __4:26-cv-2154_____

**ORIGINAL COMPLAINT**

**INTRODUCTION**

Plaintiff Re'Neekyia Davis files this civil action against Defendants Secure Parcel Delivery Service, LLC("SPDC") and Amazon Logistics, Inc. ("Amazon") for unlawful employment discrimination based on race and pregnancy, retaliation, and failure to provide reasonable accommodations. Upon information and belief, Amazon Logistics, Inc. acted as a joint employer of Plaintiff and exercised significant control over her work assignments, supervision, and working conditions. Defendants' actions violate federal law, including Title VII of the Civil Rights Act of 1964, the Pregnancy Discrimination Act, and the Pregnant Workers Fairness Act, the Americans with Disabilities Act, and the Family and Medical Leave Act. This action arises under federal law.

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises under federal laws prohibiting employment discrimination, including Title VII of the Civil Rights Act of 1964, the Pregnancy Discrimination Act, the Pregnant Workers Fairness Act, the Americans with Disabilities Act, and the Family and Medical Leave Act.

2. This Court also has jurisdiction pursuant to 42 U.S.C. § 2000e-5(f)(3), which authorizes federal courts to hear claims arising under Title VII of the Civil Rights Act of 1964.

3. Venue is proper in the United States District Court for the Southern District of Texas, Houston Division pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices described in this Complaint occurred in Houston, Texas.

4. Defendant Secure Parcel Delivery Service, LLC employed Plaintiff and assigned her to perform delivery services at Amazon Delivery Station DHO3 located in Houston, Texas.

5. The discriminatory and retaliatory conduct described in this Complaint occurred while Plaintiff was performing work for Secure Parcel Delivery Service, LLC at the Amazon Logistics Delivery Station DHO3 facility.

6. Upon information and belief, Defendant Amazon Logistics, Inc. exercised significant operational control over Plaintiff's work assignments, supervision, scheduling, and working conditions while Plaintiff performed work for Secure Parcel Delivery Service, LLC.

7. Based on the facts presented, Amazon Logistics, Inc. may qualify as a joint employer of Plaintiff under applicable federal employment laws.

8. Plaintiff filed Charges of Discrimination with the Equal Employment Opportunity Commission (EEOC) alleging discrimination based on race, pregnancy, sex, and retaliation.

9. The EEOC issued Plaintiff a Notice of Right to Sue on December 18, 2025.

10. Plaintiff files this action within ninety (90) days of receiving the Notice of Right to Sue, as required by federal law.

**PARTIES**

11. Plaintiff Reneekyia Davis is an individual residing in the State of Texas who was employed as a delivery driver by Secure Parcel Delivery Service, LLC and performed delivery services at the Amazon Delivery Station DHO3 in Houston, Texas.

12. Defendant Secure Parcel Delivery Service, LLC ("SPDC") is a delivery service partner company that provides delivery services for Amazon Logistics and employed Plaintiff during the relevant time in her employment.

13. Defendant Amazon Logistics, Inc. is a corporation that operates delivery logistics services and controlled aspects of Plaintiff's work environment, training, and operational delivery systems at the Amazon Delivery Station DHO3 in Houston, Texas.

**JOINT EMPLOYER ALLEGATIONS**

14. At all relevant times, Defendants Secure Parcel Delivery Service, LLC and Amazon Logistics, Inc. exercised joint control over Plaintiff's employment and working conditions.

15. Plaintiff was hired by SPDC but performed delivery services exclusively for Amazon Logistics through Amazon's delivery platform and operational systems.

16. Amazon Logistics established and controlled operational policies governing delivery routes, package assignments, driver expectations, and performance standards.

17. Plaintiff received training from Amazon Logistics personnel regarding delivery procedures, safety requirements, and operational expectations.

18. Amazon Logistics exercised control over Plaintiff's daily work activities through its logistics platform, delivery routing systems, and supervision within the Amazon Delivery Station. Through Amazon's Delivery Service Partner ("DSP") program, including companies

such as Secure Parcel Delivery Service, Amazon Logistics directed and controlled the work of drivers performing deliveries under its system.

19. Amazon Logistics monitored and evaluated delivery performance through scorecard systems, delivery metrics, and operational oversight that directly impacted drivers working under DSP companies.

20. Amazon Logistics maintained safety policies, delivery procedures, and operational requirements that governed the conduct of drivers performing deliveries at their facilities and through its delivery platform. Amazon Logistics exercised direct and indirect control over drivers working under Delivery Service Partner companies, including controlling delivery routes, package assignments, driver performance metrics, safety policies, training requirements, and operational supervision inside Amazon delivery stations

21. Amazon Logistics controlled driver training requirements and disciplinary standards through its delivery program, including training materials, operational guidance, and safety enforcement policies that DSP companies and drivers were required to follow.

22. Plaintiff's daily delivery assignments, route navigation, package tracking, and delivery confirmations were performed through Amazon-controlled technology platforms, including the Amazon Flex application and systems utilizing Amazon TBA tracking numbers.

23. Plaintiff was required to communicate with Amazon support personnel regarding delivery issues, including real-time operational guidance provided by Amazon personnel located outside the delivery station, including support based in Seattle.

24. Through these operational systems, technological controls, supervision, and workplace policies, Amazon Logistics exercised significant control over Plaintiff's work, making Amazon Logistics and SPDC joint employers of Plaintiff.

25. The determination of whether Amazon Logistics and SPDC functioned as joint employers is a fact intensive legal question that must be determined by this Court based on the totality of the circumstances and the evidence presented.

**FACTUAL ALLEGATIONS**

26. Plaintiff Re'Neekyia Davis began working for Defendant Secure Parcel Delivery Service, LLC ("SPDC") in May 2023 as a delivery driver assigned to Amazon Delivery Station DHO3 in Houston, Texas.

27. Upon beginning her employment, Plaintiff received delivery training conducted by Amazon Logistics personnel at the Amazon DHO3 warehouse regarding Amazon's delivery expectations, delivery procedures, and operational requirements.

28. Plaintiff performed delivery services using Amazon Logistics' delivery platform, routing systems, and operational procedures while working for SPDC.

29. On November 4, 2024, Plaintiff informed SPDC management that she was pregnant. At that time, Plaintiff had not been placed on any medical restrictions and notified management solely to ensure that the company was aware of her pregnancy.

30. Immediately after notifying SPDC management of her pregnancy, Plaintiff was told that she would likely have to take leave because delivery drivers were required to lift packages, perform deliveries and drive delivery vehicles.

31. Plaintiff informed management that her doctor had not placed her on any restrictions and that she was only notifying them of her pregnancy. SPDC management nevertheless indicated that no light-duty work was available and that accommodation would not be provided.

32. On November 19, 2024, Plaintiff experienced severe morning sickness while delivering packages on her assigned route.

33. Plaintiff notified SPDC Vice President Jennifer Baldwin, and Amazon personnel were also made aware of the situation. Plaintiff was instructed to return from her route and was removed from delivery duties.

34. Plaintiff was informed that she would need a doctor's note before she could return to work.

35. On November 19, 2024, Plaintiff immediately went to the emergency room and received medical treatment. Plaintiff was released the same day with documentation stating that she could return to work without restrictions on December 2, 2024.

36. Plaintiff provided emergency room documentation to SPDC management. Jennifer

Baldwin refused to accept the documentation and stated that Plaintiff would need a doctor's note specifically from an OBGYN physician.

37. Plaintiff informed management that she had scheduled an OBGYN appointment for December 6, 2024.

38. While Plaintiff was away from work due to the November 19 illness, Plaintiff received a phone call from SPDC management, including Jennifer Baldwin, along with Amazon Logistics personnel, accusing Plaintiff of stealing a package from a delivery incident that allegedly occurred in October 2024.

39. The accusation occurred after Plaintiff had notified SPDC management that she was pregnant.

40. On December 6, 2024, Plaintiff attended her OBGYN appointment and was provided pregnancy-related medical restrictions.

41. On December 7, 2024, Plaintiff submitted the medical documentation outlining her work restrictions to SPDC management.

42. Shortly after receiving the documentation, Jennifer Baldwin informed Plaintiff that SPDC would not engage in an accommodation process and that Plaintiff could instead be placed on leave.

43. On December 8, 2024, during a phone conversation, Jennifer Baldwin forced Plaintiff onto leave without engaging in any interactive accommodation process.

44. Plaintiff asked whether there was a more detailed doctor's note describing possible light-duty restrictions would help facilitate accommodation. Jennifer Baldwin refused this request.

45. Plaintiff also requested the Amazon hotline number to report on the situation. Jennifer Baldwin stated that there was no Amazon hotline number available for reporting and instructed Plaintiff to review the company handbook.

46. On December 9, 2024, Plaintiff located and called the hotline number provided during Amazon Logistics training. The number directed Plaintiff to a third-party intake center.

47. The representative informed Plaintiff that any report submitted could potentially be

forwarded to either Amazon or the delivery service partner and that the intake center could not guarantee who will receive the report.

48. On December 11, 2024, Plaintiff received communication from Jennifer Baldwin and SPDC owner Terry Burnside stating that Plaintiff would need to use her remaining paid time off and later make payments toward her insurance coverage.

49. On December 12, 2024, Plaintiff submitted a formal pregnancy discrimination complaint to Terry Burnside and SPDC management via email.

50. In response, SPDC management requested additional medical documentation, including invasive mental health documentation unrelated to Plaintiff's pregnancy.

51. Plaintiff nevertheless provided additional medical documentation from her doctor describing her pregnancy-related restrictions.

52. On December 15, 2024, SPDC offered Plaintiff a trainer position.

53. On December 17, 2024, Plaintiff received an email from Amazon Logistics stating that her Amazon Flex account had been deactivated due to an alleged failure to deliver packages for more than ninety days.

54. This claim was false because Plaintiff's most recent delivery occurred in November 19, 2024.

55. The adverse actions described above and below occurred after Plaintiff notified Defendant of her pregnancy on November 4, 2024, and after Plaintiff submitted a formal complaint of pregnancy discrimination against SPDC management on December 12, 2024, thereby engaging in protected activity under federal employment laws. Following these protected activities, Plaintiff experienced increased scrutiny, disciplinary actions, and removed from her normal duties, reduction in hours, and isolation from meaningful work assignments.

56. Beginning January 5, 2025, Plaintiff began experiencing retaliation following her complaint.

57. On January 5, 2025, Plaintiff's work schedule was altered in the timekeeping system in a way that made it appear that she had arrived late to work, and Plaintiff was publicly yelled at in front of a new employee.

58. Then events leading to the disciplinary action began on January 6, 2025. On that date, SPDC

Vice President Jennifer Baldwin instructed Plaintiff to deliver a company van to another employee located downtown who was experiencing vehicle issues so that the vehicles could be swapped. SPDC had not provided Plaintiff with a company issued work phone device and informed employees that no additional work phones were available. As a result, Plaintiff was required to use her personal phone to communicate with the coworker and obtain directions necessary to complete the assignment. SPDC vehicles were equipped with a magnetic phone holder intended for navigation use.

59. On January 7, 2025, Plaintiff issued a disciplinary write-up for the incident that occurred on January 6, 2025. Prior to the issuance of the write-up, SPDC Vice President Jennifer Baldwin attempted to instruct Plaintiff to submit a false meal break punch in the company's timekeeping system. Plaintiff refused to alter her time records or submit inaccurate information. After leaving earlier that day, Jennifer Baldwin directed a dispatcher to issue the disciplinary write-up to Plaintiff for the January 6 incident. Plaintiff requested the opportunity to discuss the circumstances surrounding the assignment and the write-up with management, but her request for a conversation was denied.

60. On January 8, 2025, Plaintiff received a message from SPDC Vice President Jennifer Baldwin instructing Plaintiff that when she reported to work each day, she should go to the Amazon Delivery Station DHO3 breakroom to receive her assignment for the day. However, After reporting to the breakroom as instructed, no work assignments were provided. Plaintiff was required to remain in the breakroom for extended periods of time during her scheduled shifts without meaningful work duties.

61. Beginning January 8, 2025, and continuing through July 4, 2025, Plaintiff was isolated in The Amazon Logistics breakroom is located at Delivery Station DHO3.

62. Plaintiff was required to sit in the breakroom from approximately 9:00 a.m. until 4:30 p.m., Sunday through Wednesday, without meaningful work assignments.

63. Plaintiff's work hours were reduced to approximately thirty hours per week during this time.

64. Plaintiff was frequently left unsupervised in the breakroom and was effectively removed from normal work duties.

65. On April 7, 2025, Jennifer Baldwin yelled at Plaintiff in the Amazon Logistics breakroom in front of other employees, personnel from other delivery service partners, and individuals present for job interviews.

66. Jennifer Baldwin incorrectly accused Plaintiff of leaving the warehouse to retrieve food, when in fact Plaintiff had ordered food through DoorDash.

67. The incident caused Plaintiff embarrassment and contributed to hostile and stressful work environment.

68. On April 10, 2025, Plaintiff submitted an additional complaint regarding her work conditions to SPDC owner Terry Burnside.

69. Terry Burnside hired an outside HR consultant to review the complaint. However, the consultant only gathered limited information and did not conduct a full or proper workplace investigation.

70. Plaintiff did not receive any meaningful update regarding the outcome of the investigation.

71. On May 1, 2025, Plaintiff filed a Charge of Discrimination with Equal Employment Opportunity Commission.

72. On May 12, 2025, Terry Burnside sent Plaintiff an email update referencing the investigation and acknowledging receipt of the EEOC complaint.

73. On June 4, 2025, Plaintiff went into labor while seated in the Amazon Logistics breakroom at Delivery Station DHO3. The disparate treatment between Plaintiff and Gutierrez occurred after Plaintiff notified Defendants of her pregnancy and after Plaintiff submitted a formal complaint of pregnancy discrimination, further supporting Plaintiff's claims of unlawful discrimination and retaliation.

74. Plaintiff was unsupervised at the time and SPDC management, and Amazon personnel were not immediately aware of the situation until another individual alerted them.

75. The lack of supervision placed Plaintiff and her child at risk during a medical emergency.

76. On June 4, 2025, SPDC management submitted a witness statement from dispatcher Terresariade Nico to the Amazon Logistics safety team describing the labor incident in the Amazon breakroom.

77. Plaintiff remained on protected medical leave under the Family and Medical Leave Act following the birth of her child.

78. From June 4, 2025, through February 18, 2026, Plaintiff experienced interference with her rights under the Family and Medical Leave Act and the Americans with Disabilities Act.

79. Another employee, Momcerrato Gutierrez, a Hispanic female in her late twenties or early in their thirties, who worked for SPDC at the same Amazon DHO3 facility, became pregnant around the same time as Plaintiff, a black female who is in late twenties or early thirties.

80. Plaintiff's expected due date was June 21, 2025, and Ms. Gutierrez's expected due date was June 27, 2025.

81. Despite having similar pregnancy-related restrictions, Ms. Gutierrez continued performing delivery work and retained access to incentives, bonuses, and regular job duties.

82. Plaintiff was removed from her normal duties, denied opportunities to earn delivery incentives, and isolated in the breakroom after informing management of her pregnancy. In contrast, another pregnant employee, Momcerrato Gutierrez, who worked at the same Amazon Delivery Station (DHO3) was permitted to continue performing work duties while pregnant. SPDC Vice President Jennifer Baldwin informed Plaintiff that drivers were required to be able to lift approximately 50 pounds to perform delivery duties and that delivery packages could not be adjusted to accommodate Plaintiff's pregnancy related restrictions. Based on this representation, Plaintiff was told that she could not be accommodated and was removed from delivery duties. However, Gutierrez had a medical lifting restriction of approximately 25 pounds or less and was accommodated by being assigned delivery routes consisting of smaller packages that did not include oversized packages exceeding her restriction, allowing her to continue performing delivery duties. Plaintiff, by contrast, was confined to the breakroom without meaningful assignments. When Plaintiff asked other members of management whether she could sit near the management desk area: she was informed that Terry Burnside and Jennifer Baldwin had

instructed that Plaintiff must remain in the breakroom because her presence near management would "interfere with management." After Plaintiff's water broke at the Amazon Delivery On June 4, 2025, Plaintiff later received a photograph on June 17, 2025, showing Gutierrez had been removed from delivery duties and placed in a more favorable position seated at a desk next to SPDC management at the delivery station, demonstrating that similarly situated employees were treated more favorably than Plaintiff.

84. Several of the events described herein are supported by recordings, emails, photographs, and other documentation maintained by Plaintiff, which reflect statements made by SPDC management and Amazon Logistics and document the treatment Plaintiff experienced after reporting her pregnancy and submitting a discrimination complaint. These materials will be produced during discovery.

**CAUSES OF ACTION**

**COUNT I – Pregnancy Discrimination** (Title VII and Pregnancy Discrimination Act)
Plaintiff realleges and incorporates by reference the preceding paragraphs. Plaintiff was pregnant and informed Defendants of her pregnancy on November 4, 2024. After learning of Plaintiff's pregnancy, Defendants subjected Plaintiff to adverse employment actions, including removal from her normal duties, denial of opportunities to earn delivery incentives, isolation from meaningful work assignments, and disciplinary actions. Defendants refused to provide reasonable accommodations for Plaintiff's pregnancy-related limitations. Similarly situated pregnant employees were treated more favorably than Plaintiff. Defendants' actions constitute unlawful discrimination on the basis of pregnancy in violation of Title VII of the Civil Rights Act of 1964 and the Pregnancy Discrimination Act.

**COUNT II – Race Discrimination** (Title VII of the Civil Rights Act of 1964)
Plaintiff realleges the preceding allegations. Plaintiff is a member of a protected class. Defendants treated similarly situated employees outside Plaintiff's protected class more favorably, including allowing another pregnant employee to continue performing work duties and receive accommodation that were denied to Plaintiff. Defendants' actions constitute

unlawful discrimination based on race in violation of Title VII.

**COUNT III – Failure to Accommodate Pregnancy** (Pregnant Workers Fairness Act)

Plaintiff realleges the preceding allegations. Plaintiff had pregnancy-related limitations that were communicated to Defendants. Defendants failed to engage in a good-faith interactive process to determine reasonable accommodations. Instead of providing accommodation, Defendants removed Plaintiff from her duties and isolated her from meaningful work assignments. Defendants' conduct violated the Pregnant Workers Fairness Act.

**COUNT IV – Retaliation** (Title VII and Pregnant Workers Fairness Act)

Plaintiff realleges the preceding allegations. Plaintiff engaged in protected activity when she reported her pregnancy and filed a complaint of pregnancy discrimination. Following these protected activities, Defendants subjected Plaintiff to retaliatory actions including discipline, schedule manipulation, isolation in the breakroom, and removal from work duties. Defendants' actions constitute unlawful retaliation under federal law.

**COUNT V – FMLA Interference and Retaliation** (Family and Medical Leave Act)

Plaintiff realleges and incorporates by reference the preceding allegations. Plaintiff was entitled to protections under the Family and Medical Leave Act (FMLA). Beginning on or about June 4, 2025, when Plaintiff went into labor at the Amazon Delivery Station, Plaintiff required medical leave and related protection under the FMLA. From approximately June 4, 2025 through at least February 28, 2026, Defendants interfered with Plaintiff's rights under the FMLA and retaliated against Plaintiff for exercising those rights. Defendants' conduct caused harm and damage to Plaintiff.

**DAMAGES AND HARM SUFFERED**

Plaintiff suffered significant harm as a direct result of Defendants' unlawful actions described in this Complaint.

Defendants' conduct caused Plaintiff emotional distress, humiliation, anxiety, and mental anguish. Plaintiff was subjected to repeated workplace hostility, isolation from normal work duties, and public humiliation after informing management of her pregnancy and reporting

pregnancy discrimination.

Defendants ignored Plaintiff's pregnancy-related medical restrictions and required Plaintiff to remain seated for prolonged periods of time in the Amazon delivery station breakroom from approximately 9:00 a.m. to 4:30 p.m., despite medical documentation stating that prolonged Sitting should be avoided.

Defendants further placed Plaintiff and her unborn child in harm's way by leaving Plaintiff unsupervised and neglected inside the Amazon warehouse while she was pregnant and experiencing medical complications. Plaintiff went into labor at the delivery station on June 4, 2025 while seated in the breakroom without supervision or assistance. Management only came to Plaintiff's location after being notified that Plaintiff was actively going into labor.

This situation created a serious and dangerous condition that placed both Plaintiff and her unborn child at risk of significant medical harm due to the lack of supervision and assistance during a medical emergency.

This dangerous situation occurred after Plaintiff reported pregnancy discrimination and retaliation and while Plaintiff were being isolated from normal duties, demonstrating Defendants' continued disregard for Plaintiff's health, safety, and federally protected rights.

As a result of Defendants' actions, Plaintiff experienced severe stress during pregnancy and required medical treatment, including psychiatric care for post-traumatic stress symptoms and physical therapy related to pregnancy complications following childbirth.

Defendants' actions also caused Plaintiff financial harm including lost wages, lost delivery incentives, lost employment opportunities, and other economic losses.

Defendants' actions were intentional, reckless, and carried out with deliberate disregard for Plaintiff's federally protected rights. Such conduct was malicious and oppressive, entitling Plaintiff to punitive damages under applicable federal law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Re'Neekyia Davis respectfully requests that the Court enter judgment in her favor and grant the following relief:

A. Compensatory damages for emotional distress, humiliation, anxiety, and mental anguish caused by Defendants' unlawful conduct.

B. Back pay and front pay for lost wages, lost benefits, lost delivery incentives, and other economic losses resulting from Defendants' actions.

C. Compensation for medical expenses and other damage related to physical and emotional harm suffered by Plaintiff because of Defendants conduct.

D. Punitive damages to punish Defendants for their reckless and malicious disregard of Plaintiff's federally protected rights and to deter similar misconduct in the future.

E. Costs of this action and any other relief the Court deems just and proper under federal law.

**JURY DEMAND**

Plaintiff Re'Neekyia Davis hereby demands a trial by jury on all issues so triable in this action.


Respectfully submitted,


Re'Neekyia Davis

Plaintiff Pro Se

Address: 191514 South Oblong Circle

City, State, Zip: Cypress, TX 77429

Phone: 346-309-9342

Email: rdavisspdc@gmail.com